## IN RE: The Marriage of THELK

Case No. 83-318-FR-01

Nineteenth Judicial Circuit, Indian River County

August 8, 1986

### APPEARANCES OF COUNSEL

**Charles A. Sullivan, Sr., Sullivan, Sullivan, Lajoie, Thacker & Berry,** for petitioner/wife.

**Calvin B. Brown, Collins, Brown, Caldwell & Mann,** for respondent/ husband.

## OPINION OF THE COURT

DANIEL M. KILBRIDE, Acting Circuit Judge.

THIS CAUSE having come on for final hearing on the 30th day of June, 1986, and the parties having appeared before the Court, and the Court having heard testimony of the parties and their witnesses, and the Court having reviewed all documents admitted into evidence, having heard arguments of counsel and having reviewed the applicable law, and the Court being otherwise advised in the premises, finds and holds as follows:

### FINDINGS OF FACT

1. This Court has jurisdiction of the parties and subject matter of this suit.

2. The parties were married to each other on November 8, 1969.

3. The marriage between the parties is irretrievably broken and should be dissolved.

4. There have been no children born of this marriage between the parties.

5. At the time of the marriage, the Husband owned the following assets:

| | |
|---|---|
| Home with equity of | $17,900.00 |
| Business with equity of | 5,000.00 |
| Prints with equity of | 2,300.00 |
| Automobile with equity of | 7,000.00 |

6. The Wife came into marriage with an automobile and furnishings of a three-bedroom house.

7. Prior to the marriage the Husband, with separate funds, purchased a home in his name in which the parties lived until their separation.

8. The Wife had been previously married and had four children by that marriage, one of whom lived with the parties approximately eight years.

9. The Wife was an educator and taught elementary school children for thirty years.

10. The Husband is a golf professional; both before and since the marriage.

11. During the course of the marriage the Wife inherited assets from her mother's estate of approximately $19,000.00.

12. From the date of the marriage until 1975 the parties had a joint

5

account into which they "pooled" their income. This account was used to pay marital obligations, household bills, and support to some extent, her four children by a previous marriage. The Wife presented voluminous records which included deposits to the joint account and checks written for various expenditures. However, many of the deposits made and checks written were missing, which could well be expected since they dated back to the early 1970's. The Court finds that this evidence substantiates the testimony of both parties that their funds went to defray the marital and family obligations.

13. During the course of the marriage there were no major improvements to the home which would have caused the property to increase in value, other than by appreciation.

14. Through monthly payments on the mortgage, the unpaid principal balance has decreased from an original amount of $27,500.00 to $5,100.00.

15. The former marital home is not a marital asset for which the Wife has a claim under the theory of equitable distribution. *Horton v. Horton*, 433 So.2d 1386 (Fla. 5th DCA 1983) and *Palumbo v. Palumbo*, 439 So. 2d 232 (Fla. 5th DCA 1983).

16. Although the increase in the value of the home during the course of the marriage is represented principally by appreciation in value, the Wife has contributed to the reduction of the principal balance of the mortgage loan. These funds were derived from the contribution to the joint account of the parties of her salary and her inheritance from her mother's estate through 1975.

17. Therefore, the Wife is entitled to a share or portion of same through lump sum alimony. Cf. *Sanders v. Sanders*, 11 FLW 1547 (Fla. 1st DCA Opinion filed July 15, 1986).

18. In 1975 the Wife stopped teaching and purchased a building and started a child care and preschool facility.

19. The Wife contributed $6,000.00 from her school retirement fund and the Husband contributed $5,000.00 of borrowed money, all of which was used for the down payment and to purchase equipment for the school.

20. From 1975 to 1982, the Wife worked at the school.

21. The Husband, in the early years, did the books and payroll for the school. In August of 1982, the school was sold for $115,000.00. The buyers gave to the parties a $95,000.00 purchase money mortgage. From the cash at closing were paid the expenses on the sale, with the balance being split in order to recapture their original investment. The

6

$95,000.00 mortgage was a wraparound mortgage; the payments were $1,362.00 per month. From this amount the parties had to pay the first mortgage in the amount of $360.00 per month to Atlantic Savings. The first mortgage had a balloon payment of $27,000.00 which was due in August of 1985.

22. The Husband testified that at about the time of the separation the parties discussed and agreed that the Wife would receive the $1,362.00 monthly mortgage check and pay from it the $360.00 first mortgage to Atlantic Savings, and that the difference of approximately $1,000.00 would be saved by her to be used to pay off the $27,000.00 balloon payment due in August of 1985, and that the Wife would seek re-employment. In the interim, the Husband would fully support the Wife which included paying the mortgage, utilities, phone, automobile, gas and maintenance, medical, some clothing, plus $100.00 per week. This would save the necessary money to pay the balloon mortgage payment, and that the Wife would be entitled to this mortgage as her share of the marital assets. During this period of time, the Husband did, in fact, assign his interest in the mortgage to the Wife. The Wife disputes this testimony, notwithstanding the fact that this plan was carried out on the Husband's party until July of 1985 when he discovered that she had not saved the $1,000.00 per month, but instead she had spent virtually all of it. It was at this time that the dissolution of marriage proceeding was pushed to its conclusion. The Court finds that the Husband had supported the Wife during the wole period of separation, same lasting approximately 4 years. The Wife has made no attempt to seek employment during this time notwithstanding the fact that she has worked her entire adult life. From August of 1982 until July of 1985, the Wife collected on the first mortgage $47,802.00 and paid to Atlantic Savings $13,673.00. She spent all but approximately $2,000.00 of the difference of $33,409.00. During a portion of 1985 the Husband gave to the Wife an additional $100.00 per week.

23. In late summer of 1985 the Husband stopped making weekly support payments. Thereafter, the Temporary Order was entered in this case. The Wife was required to refinance the first mortgage in August 1985. The net equity in the wrap-around mortgage (from the sale of the school) is approximately $62,000.00. At this time, this mortgage is solely in her name by virtue of the Husband's assigning interest in it to the Wife.

24. The Husband's current income as a professional golfer, based upon his 1985 Income Tax return and his Financial Affidavit, is a gross of $653.00 per week and a net of $487.00 per week. The current value of the Husband's business is approximately $18,000.00. At the time of

7

the marriage it was approximately $5,000.00. This amounts to an increase of approximately $13,000.00. The value of the prints that he owns is presently $2,000.00. He has a savings account with P.G.A. of $1,800.00 and a receivable on the sale of an automobile of $2,500.00. In 1978 he started a Keough retirement account which now has an approximately value of $30,000.00. The actual increase in the equity in his home (separate and aside from appreciation in value) is $22,400.00 (the principal reduction in the mortgage during the marriage). The value of assets titled solely in his name total $71,800.00. The Court finds that the Keough and P.G.A. accounts are marital assets.

25. The Wife has a B. S. degree in Education although her teaching certificate has lapsed. The Husband produced testimony from the personnel office of Indian River County School Board as to the requirements to re-acquire a teaching certificate, and testimony was elicited that teaching positions were available in the school system.

26. The Wife testified that she has no physical or psychological disabilities or infirmities; that she is under a doctor's care for high blood pressure but that this has existed since early 1970's. The depositions of Dr. E. J. Vann was taken post-trial, and from Dr. Vann's testimony the Court finds that the Wife is in reasonably good health except for obesity and hypertension, (or high blood pressure) which is controlled with medication. The testimony of Dr. Vann to the effect that work could "possibly cause her medical problems" is not sufficient to convince the Court that she cannot work or should not work. While it might seem best for the Wife not to work, the Court finds that there is no reason by the Wife cannot obtain gainful employment such as she had during her adult life, either as a teacher, administrator, or an occupation in another field.

It is, thereupon

ORDERED and ADJUDGED as follows:

1. DISSOLUTION OF MARRIAGE: The marriage between LOUIS J. THELK and BETTY THELK be, and the same is hereby dissolved, and the parties, and each of them, are hereby forever freed of and from the bonds of matrimony heretofore existing between them and from the obligations arising therefrom. The parties are hereby restored to the status of single persons.

2. EQUITABLE DISTRIBUTION OF PROPERTY:

A. The Wife shall retain as her sole and separate property the mortgage on the sale of the school.

B. The Husband shall retain as his sole and separate property the

8

marital home titled solely in his name, described as Lot 5, Block 4, Bethel Isle Unit No. 1.

C. The Wife shall have exclusive possession of the marital home for the period of six (6) months from the date hereof.

D. During the time the Wife has exclusive possession of the marital home, the Husband shall be responsible for the taxes, insurance and mortgage payments, and all other costs be the responsibility of the Wife.

E. The Wife shall be entitled to the furniture, fixtures, appliances, paintings and appurtenances located in the marital home; except for the Husband's personal belongings and the items of furniture given to him by his parents.

F. The Husband, shall pay to the wife the sum of $15,000.00, representing one-half of the parties Keough Account. Said amount to be paid within thirty (30) days from the date hereof.

G. All other assets in the Husband's individual name shall remain his sole assets, and all assets in the Wife's name shall remain her sole assets.

3. REHABILITATIVE ALIMONY: Commencing on the 1st day of September, 1986 the Husband, LOUIS J. THELK, shall pay directly to the Wife, BETTY THELK, the sum of $750.00 each and every month for rehabilitative alimony for a period of eighteen (18) months.

4. MEDICAL EXPENSES: The Husband shall pay for and obtain for the Wife a medical insurance policy with benefits substantially similar to the benefits the Wife now receives under the Husband's policy; and shall pay the same for a period of three years.

5. LUMP SUM ALIMONY: The Husband shall pay to the Wife the sum of Twenty Thousand ($20,000.00) Dollars as and for lump sum alimony, which shall be paid at the rate of $500.00 per month until paid, beginning September 1, 1986.

6. ATTORNEYS' FEES AND COSTS: The Husband shall be responsible for a portion, not to exceed one-half of the Wife's reasonable attorney's fees and all court costs in this proceeding. In the event the amount and extent of attorney's fees are not resolved by mutual agreement by the parties, the Court reserves ruling to take testimony on the issue of attorney's fees.

7. JURISDICTION: Jurisdiction of this cause and the parties hereto is retained for the entry of such further orders as may be proper.

DONE and ORDERED in Chambers at Vero Beach, Indian River County, Florida, this 8th day of August, 1986.